UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE STOUT,<br><br>                   Plaintiff,<br><br>   v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, et al.,<br><br>                   Defendants. | Case No. 8:20-cv-01675-FLA (KESx)<br><br>**ORDER FOLLOWING BENCH TRIAL**<br><br>Date:         August 2, 2022<br>Time:        9:00 a.m.<br>Courtroom:  6B |

      This is an action brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), by Plaintiff Julie Stout ("Plaintiff" or "Ms. Stout") against Defendant Liberty Life Assurance Company of Boston ("Defendant" or "Liberty").  The action involves a dispute over Plaintiff's entitlement to short-term disability ("STD") and long-term disability ("LTD") benefits under an employee welfare benefit plan established by Plaintiff's former employer, non-party Dassault Systèmes Americas Corp. ("Dassault"), and administered by Liberty.

      Defendant filed an Opening Trial Brief on January 20, 2022.  Dkt. 47 ("DOTB").  Plaintiff filed a Corrected Amended Opening Trial Brief on March 24, 2022.  Dkt. 62 ("POTB").  Plaintiff filed a Responsive Trial Brief on April 15, 2022.

Dkt. 63 ("PRTB"). Defendant filed a Corrected Amended Responsive Trial Brief on April 19, 2022. Dkt. 66-1 ("DRTB").

On August 2, 2022, the court held a bench trial in this case. After evaluating the evidence at trial, including making determinations of credibility, the court issues the findings of fact and conclusions of law set forth below.

## I. FINDINGS OF FACT[1]

### A. The Disability Benefit Plans

Plaintiff began working for Dassault on April 9, 2018. Dkt. 41-1 at 1. Her employment with Dassault ended on March 8, 2019. Dkt. 41-5 at 144-48. In connection with her employment, Dassault offered a STD and LTD benefits plan.

Dassault established a self-insured STD plan, and entered into an agreement with Liberty to administer claims. Dkt. 41-5 at 225-30. As the Sponsor of the plan, Dassault is "responsible for all the payment of all benefits under the [STD] Plan," while Liberty provides claims administrative services including reviewing and evaluating claims and making payment recommendations. *Id.* at 230.

The STD plan provides: "[w]hen Liberty, on behalf of the Sponsor, receives Proof that a Covered Person is Disabled due to Injury or Sickness … [s]he may be eligible to receive a Weekly Benefit … ." *Id.* at 245. To be eligible for benefits under the STD plan, an employee must be in "Active Employment" with Dassault and coverages ends on the "date employment terminates." *Id.* at 233, 252.

Dassault also maintained a LTD plan. *Id.* at 175. Unlike the STD plan, the LTD plan was fully insured, with Liberty responsible for payment of benefits. *Id.* The LTD plan included a pre-existing condition provision, which excluded disability caused by a pre-existing condition that began in the first 12 months immediately after

---

[1] The characterization of a finding as one of "fact" or "law" is not controlling. To the extent that a finding is characterized as one of "law" but is more properly characterized as one of "fact" (or vice versa), substance shall prevail over form.

2

the covered person's effective date of coverage.  Dkt. 41-5 at 210.  Plaintiff's effective date of coverage was April 9, 2018.  Dkt. 41-1 at 1.

### B.   Plaintiff's STD Claim

Liberty first received notice of Plaintiff's STD claim on March 18, 2019.  Dkt. 41-1 at 13-14.  Prior to that date, Dassault encouraged Stout to open a claim with Liberty, but Stout opted only to open a California state disability claim.  *Id.* at 33.  Because Stout apparently believed that Dassault had opened a STD claim on her behalf, Dassault agreed to open a claim as of February 19, 2019.  *Id.*; Dkt. 41-5 at 144.

In connection with Plaintiff's application for STD benefits, her primary care provider, Constance Bouvier, PAC ("Bouvier"), returned a Restrictions Form dated April 10, 2019.  Dkt. 41-5 at 134-36.  Bouvier described that Plaintiff was "required to be healthy enough for frequent travel and [was] restricted by repeated GI infections" and that she experienced a lack of energy, fatigue, nausea, and cough.  *Id.*  Plaintiff also reported that on March 13, 2019, she fell and injured her knee.  Dkt. 41-1 at 12.

On May 6, 2019, Nurse Disability Consultant Margaret O'Brien ("O'Brien") completed a clinical assessment, finding there was insufficient evidence to warrant functional restrictions from February 19 to March 17, 2019.  Dkt. 41-5 at 2001-2002.  However, O'Brien opined that Stout may have had functional restrictions from March 18, 2019 through at least April 30, 2019 based on her knee injury.  *Id.* at 78-79.

On May 15, 2019, Disability Claims Manager Na'Shawn Davis ("Davis") informed Plaintiff by letter that she had not met her burden of proving entitlement to STD benefits, and that the knee injury occurred after Stout's employment terminated.  *Id.* at 73-76.

### C.   Plaintiff's Appeal of the STD Claim Decision

On May 15, 2019, Plaintiff appealed the adverse claim decision.  Dkt. 41-1 at 10.  In support of her appeal, Plaintiff submitted a letter to Liberty on May 27, 2019, which detailed her medical conditions.  Dkt. 41-4 at 464-71.  Appeals Consultant Jeronda King ("King") referred Plaintiff's file to a third party for review by a board-

certified internal medicine physician, Dr. Taj Jiva ("Jiva"). *Id.* at 441-48. King sent Jiva's report to Plaintiff for comment. *Id.* at 431-40. Attorney Robert McKennon responded, indicating he represented Plaintiff "in connection with her group long-term disability and short-term disability insurance claims." *Id.* at 421-24. On July 25, 2019, Liberty sent McKennon a complete copy of Plaintiff's STD benefits claim file and informed him that "[n]o long term disability claim has been processed for Ms. Stout." *Id.* at 420. On November 8, 2019, McKennon submitted a second appeal of Plaintiff's STD claim. *Id.* at 381-404. Liberty conducted additional review of the STD claim and, by letter dated March 31, 2020, King informed Plaintiff that Liberty was upholding its initial claim recommendation. Dkt. 41-1 at 33-56. At no point did Plaintiff file a claim for LTD benefits. POTB at 5.

### D. Plaintiff's Settlement Agreement

On January 3, 2020, Plaintiff filed a lawsuit against Dassault (the "Dassault action") alleging, *inter alia*, she was disabled when Dassault hired her, she informed Dassault she had a medical disability at the time she was hired, and that Dassault wrongfully terminated her employment after she took disability leave. *See generally* Dkt. 65-3. On December 22, 2020, Plaintiff entered into a Settlement Agreement ("Settlement Agreement") in which she agreed to a general release of all claims against Dassault, including any claim against Dassault for short-term or long-term disability benefits. *See* Dkt. 50 at 3-4. The Settlement Agreement explicitly excluded Liberty Life Assurance Company of Boston from the released parties. *Id.* at 3.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

In the Ninth Circuit, actions to recover benefits under ERISA are adjudicated by bench trial under Fed. R. Civ. P. 52(a) ("Rule 52(a)"). *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999). Under Rule 52(a), the court can resolve factual issues in favor of either party, and must "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a).

A denial of ERISA benefits challenged under 29 U.S.C. § 1132 "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[California Insurance Code] § 10110.6 voids any 'provision that reserves discretionary authority to the insurer, or an agent of the insurer.'" *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 695 (9th Cir. 2017) (quoting Cal. Ins. Code § 10110.6(a)). "The statute, which became effective on January 1, 2012, is 'self-executing'; thus, if any discretionary provision is covered by the statute, 'the courts shall treat that provision as void and unenforceable.'" *Id.* at 692 (quoting Cal. Ins. Code § 10110.6(g)).

Here, the parties agree that de novo review applies. *See* POTB at 16; DOTB at 29. The court, therefore, reviews Plaintiff's claim under a de novo standard and "evaluate[s] whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Regardless of the standard of review, "[w]hat the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." *Id.* at 969.

It is a claimant's burden to prove she is entitled to benefits by a preponderance of the evidence. *Muniz v. Amec Constr. Mgmt. Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("As concluded by other circuit courts which have addressed the question, when the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant."); *Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1123 (C.D. Cal. 2015).

/ / /

/ / /

## III. DISCUSSION

First, the court finds that Plaintiff's claim for STD benefits against Liberty fails. Dassault's STD plan is self-funded, and Dassault is responsible for the payment of all benefits under the STD plan. Dkt. 41-5 at 225-30. Liberty acts as a claims administrator and is not obligated to pay STD benefits. *Id.* In connection with the Dassault action, Plaintiff entered into a Settlement Agreement releasing Dassault from any obligation to pay STD benefits.[2] Dkt. 50 at 3-4. Plaintiff, thus, has already settled and released her STD claims. *See US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013) ("The statutory scheme … is built around reliance on the face of written plan documents. … The plan, in short, is at the center of ERISA.") (quotation marks omitted).

Plaintiff argues she did not release Liberty through the Settlement Agreement.[3] PRTB at 4. Although the Settlement Agreement explicitly excludes Liberty from any release of liability, Liberty cannot be held liable for benefits it has no obligation to pay. *See US Airways*, 569 U.S. at 100-01. Accordingly, Plaintiff's claim for STD benefits against Liberty fails.

Second, Plaintiff's claim for LTD benefits fails for failure to exhaust administrative remedies. "ERISA itself requires covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980). It is well settled that "a claimant must avail himself or herself of a plan's own internal review procedures

---

[2] At trial, Plaintiff argued the court should ignore the Settlement Agreement because it was not included in the Administrative Record. The Administrative Record pertains to the merits of Liberty's denial of STD benefits. The Settlement Agreement would not be included in the Administrative Record, and it does not go to the merits of Plaintiff's claim.

[3] During trial, Plaintiff conceded that all claims against Dassault were resolved as part of the Settlement Agreement.

6

before bringing suit in federal court." *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995).

Unlike the STD plan, the LTD plan is fully insured, and Liberty is responsible for paying claims under the LTD plan. Plaintiff, however, concedes she did not *apply* for LTD benefits as required, before filing the subject action. POTB at 5. Because Plaintiff did not pursue a claim for LTD benefits through the plan, Liberty never evaluated whether she was disabled under the LTD benefit plan and did not issue a denial of LTD benefits. Without the benefit of an initial evaluation or administrative review, Plaintiff cannot establish she is entitled to LTD benefits. Likewise, the court is without a factual record it can evaluate in connection with a LTD claim. Thus, Plaintiff's claim for LTD benefits fails. *See Diaz*, 50 F.3d at 1483.

Plaintiff argues it would have been futile for her to pursue a LTD claim because her STD claim had already been denied. POTB at 5. However, the requirements to qualify for benefits under the LTD plan differ from those under the STD plan. For example, the LTD plan contains a pre-existing condition exclusion. *See* Dkt. 41-5 at 210. If Plaintiff had submitted a LTD claim, it would have been subject to a different level of review, and Liberty would have needed to evaluate whether Plaintiff's disability was subject to the pre-existing condition exclusion. Indeed, in her opening brief, Plaintiff asserts she suffers from multiple medical conditions that were ongoing for years, including Multiple Sclerosis, which was previously diagnosed as a major thyroid condition from mold exposure starting in June 2018, severe pain related to spinal surgery in 2015, abdominal ovarian disease for which she had 11 operations, and moderate episode of major depressive disorder for which she has taken medication since 2013. POTB at 17-18.

Plaintiff does not explain how the denial of her STD claim would have rendered it futile for her to apply for LTD benefits under the LTD plan. "[B]are assertions of futility[,]" like those alleged here, "are insufficient to bring a claim within the futility exception, which is designed to avoid the need to pursue an administrative review that

7

is demonstrably doomed to fail." *Diaz*, 50 F.3d at 1485. Accordingly, Plaintiff fails to establish it was futile for her to pursue a LTD claim under the plan, and the court finds Plaintiff was required to exhaust her administrative remedies by applying for LTD benefits under the plan before filing the subject action.

Having found Plaintiff's claims for STD and LTD benefits fail for the reasons discussed above, the court need not reach the merits of Plaintiff's claim for STD benefits.

## IV.  CONCLUSION

Plaintiff's claim to recover benefits under ERISA against Liberty is DENIED. No later than five business days from the filing of this order, Defendant's counsel shall submit a proposed judgment and email a copy in Word format to the courtroom deputy.

IT IS SO ORDERED.

Dated: February 28, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge